1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

**United States District Court**
**For the Northern District of California**

11   ATMEL CORPORATION, a Delaware              No. C 06-2138 CW
     corporation; ATMEL SWITZERLAND, a
12   corporation; ATMEL FRANCE, a               ORDER DENYING
     corporation; ATMEL SARL, a                 DEFENDANT'S MOTION
13   corporation,                               TO DISMISS

14            Plaintiffs,

15        v.

16   AUTHENTEC, INC., a Delaware
     corporation,
17
              Defendant.
18   _____/

19

20        Defendant Authentec, Inc. moves pursuant to Federal Rule of

21   Civil Procedure 12(h)(3) to dismiss this action for lack of

22   standing.  Plaintiffs Atmel Corporation, Atmel Switzerland, Atmel

23   France and Atmel SARL oppose the motion.  The matter was submitted

24   on the papers.  Having considered all of the papers filed by the

25   parties and the evidence cited therein, the Court denies

26   Defendant's motion.

27

28

BACKGROUND

On June 5, 1997, U.S. patent application no. 08/870,002 was filed.  On September 11, 2001, U.S. Patent No. 6,289,114 (the '114 patent) was issued and assigned to Thomson-CSF.  In late December, 1999, while the patent application was pending, Thomson-CSF assigned a majority of the shares in its subsidiary, Thomson-CSF Semiconducteurs Specifiques (TCS) to a third party.  As part of the agreement, Thomson-CSF also assigned its interest in several patents, including the '114 patent along with the majority interest in TCS.  The assignment was effective May 22, 2000.  At some point after the assignment TCS became known as Atmel Grenoble.

Until its sale in May, 2006, Atmel Grenoble was a wholly owned subsidiary of Atmel Paris.  Atmel Paris is a wholly owned subsidiary of Plaintiff Atmel Corporation.  Plaintiffs provide evidence that, in the United States, Atmel Corporation alone has practiced the patent and been responsible for its enforcement.

On March 22, 2006, Atmel Corporation filed this suit, alleging infringement of the '114 patent.  On May 1, 2006, Atmel Grenoble assigned its interest in its patents, including the '114 patent, to Atmel Switzerland.  On November 1, 2006, Atmel Corporation filed an amended complaint joining Atmel Switzerland, Atmel France and Atmel SARL as Plaintiffs and added claims regarding U.S. Patent No. 6,459,804 (the '804 patent).

Defendant now moves pursuant to Federal Rule of Civil Procedure 12(h)(3) to dismiss the action, arguing that Atmel Corporation lacked standing at the inception of this case.

2

United States District Court

For the Northern District of California

DISCUSSION

Standing is a threshold issue faced before reaching substantive matters.  See Stoianoff v. Montana, 695 F.2d 1214, 1223-1224 (9th Cir. 1983).  Federal courts have the duty to dismiss an action if standing is wanting.  Bernhardt v. County of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002).  Standing has both constitutional and prudential limitations.  See Estate of McKinney v. United States, 71 F.3d 779, 782 (9th Cir. 1995).  The constitutional standing requirement derives from Article III, Section 2 of the United States Constitution, which restricts adjudication in federal courts to "cases" and "controversies."  See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982).  Article III standing is present only when (1) a plaintiff suffers a concrete, particularized injury which is actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 61 (9th Cir. 1994).  The absence of any one element deprives a plaintiff of Article III standing and requires dismissal.  See Whitmore v. Federal Election Comm'n, 68 F.3d 1212, 1215 (9th Cir. 1995).

In addition to constitutional standing, the Patent Act limits standing to sue for patent infringement.  Title 35 U.S.C. § 281 provides, "A patentee shall have remedy by civil action for infringement of his patent."  The Patent Act defines patentee as

3

including "not only the patentee to whom the patent was issued but also the successors in title to the patentee." <u>Id.</u> at § 100(d). The Federal Circuit notes that these provisions "have been interpreted to require that a suit for infringement of patent rights ordinarily be brought by a party holding legal title." <u>Popat Int'l Corp. v. Rpost, Inc.</u>, 473 F.3d 1187, 1189 (Fed. Cir. 2007).  Nonetheless, the court also held,

> Even if the patentee does not transfer formal legal title, the patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee.  In that event, the transferee is treated as the patentee and has standing to sue in its own name.

<u>Id.</u>  Further, the court held that an exclusive licensee with less than all substantial rights in the patent also has constitutional standing but "must normally join the patent owner in any suit on the patent." <u>Id.</u> at 1193.  The court made clear that the joinder of the patent owner "is a 'prudential' requirement, not a constitutional requirement based on Article III limitations, and that an action brought by the exclusive licensee alone may be maintained as long as the licensee joins the patent owner in the course of the litigation." <u>Id.</u> (<u>citing</u> <u>Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.</u>, 248 F.3d 1333, 1348 (Fed. Cir. 2001), <u>Mentor H/S, Inc. v. Med. Device Alliance, Inc.</u>, 240 F.3d 1016, 1019 (Fed. Cir. 2001)).

Defendant argues that it has learned through discovery that at the time the original complaint was filed, Atmel Corporation, then the only Plaintiff, did not own the '114 patent, then the only patent in suit.  Further, Defendant argues that Atmel Corporation

United States District Court
For the Northern District of California

was not an exclusive licensee.  Therefore, Defendant argues that Atmel Corporation lacked standing at the inception of the lawsuit and the case must be dismissed.

Plaintiffs counter that Atmel Corporation has exclusive rights to the '114 patent and that, as the parent company, it acts as an exclusive licensee to the patent.  Plaintiffs cite Steelcase Inc. v. Smart Technologies Inc., 336 F. Supp. 2d 714 (W.D. Mich. 2004), where the Michigan court denied the defendants' motion to dismiss the claims of plaintiff PolyVision, the parent company of Greensteel, the patent owner.  The court relied on evidence that even though "there apparently was no written license agreement, PolyVision was the sole licensee of the patent, Greensteel permitted PolyVision to exclusively practice the patent, and Greensteel granted PolyVision the right to enforce the patent." Id. at 718.  Therefore, the court found that "PolyVision effectively had exclusive control of the '309 patent and was essentially one and the same with Greensteel."  Id.

Defendant argues that Steelcase is distinguishable on two grounds.  First, Defendant notes that the issue before the Steelcase court was whether the parent company was misjoined as a plaintiff and that the patent owner had been a party to the case since its inception.  However, as stated above, the Federal Circuit has held that where an exclusive licensee has constitutional standing but lacks prudential standing, the litigation may be maintained if the licensee joins the patent owner, as Atmel Corporation has by joining Atmel Switzerland.  See Mentor, 240 F.3d at 1019.

United States District Court
For the Northern District of California

Defendant also argues that, unlike in <u>Steelcase</u>, the evidence in this case demonstrates that Atmel Corporation did not have any formal license rights to the patent at the time the case was filed. The May 1, 2006 transfer agreement that assigned rights in the '114 patent from Atmel Grenoble to Atmel Switzerland states, "Grenoble has not granted any licenses or other rights to the Intellectual Property.  In addition, Grenoble (i) has the full right, title and ownership, free and clear of all liens, to such Intellectual Property and Technology and (ii) holds all license rights to such Intellectual Property or Technology."  De Mory Declaration, Ex. 7 at 5.

Plaintiffs counter that Atmel Corporation was effectively an exclusive licensee, providing it constitutional standing, and that its joinder of Atmel Switzerland, the patent owner, cured any defect in prudential standing.[1]  As stated above, until Atmel Corporation sold Atmel Grenoble, Atmel Grenoble was a wholly-owned subsidiary of Atmel Paris and Atmel Paris was a wholly-owned subsidiary of Atmel Corporation.  Further, Atmel Corporation has always been the only entity that practices and enforces the patent in the United States.

Here, as in <u>Steelcase</u>, there is no evidence to suggest that either Atmel Grenoble or Atmel Switzerland has ever granted rights in the '114 patent to any party other than Atmel Corporation.  336

---

[1]Plaintiffs also argue that Atmel Corporation was an exclusive licensee with all substantial rights.  However, "if the license is to be considered a virtual assignment to assert standing, it must be in writing."  <u>Enzo APA & son v. Geapaq A.G.</u>, 134 F.3d 1090, 1093-94 (Fed. Cir. 1998).  Plaintiffs do not assert that any such writing exists.

United States District Court
For the Northern District of California

F. Supp. 2d at 718.  Further, as in <u>Steelcase</u>, the patent owner is the wholly-owned subsidiary of the licensee.  <u>Id.</u>  It is clear from the evidence presented that Atmel Corporation has always had the implicit right to make, use and sell the patented invention and to control the enforcement of the patent rights.  Therefore, Atmel Corporation has always acted as the exclusive licensee of the '114 patent.  The fact that Atmel Grenoble stated that it had not granted any licenses or other rights to the '114 patent at the time it transferred the patent to Atmel Switzerland does not undermine the evidence that Atmel Corporation, the parent company of both subsidiaries has "effectively had exclusive control" of the '114 patent since the time the suit was filed.  <u>Id.</u>

As in <u>Steelcase</u>, Atmel Corporation as the parent company controlling the patent and Atmel Grenoble and later Atmel Switzerland as the wholly-owned subsidiary that owned the patent were "essentially one and the same," further supporting a finding of constitutional standing.  <u>Id.</u>; <u>see also</u>, <u>Mi-Jack Products, Inc.</u> <u>v. The Taylor Group, Inc.</u>, 1997 U.S. Dist. LEXIS 11439, *22 (N.D. Ill. 1997) (finding standing based upon the "extremely close" relationship between the parent patent holder and the wholly-owned subsidiary licensee).  Therefore, Atmel Corporation had constitutional standing as an exclusive licensee at the inception of the case and cured the defect in prudential standing when it joined Atmel Switzerland, the patent owner.

CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion

7

to dismiss (Docket No. 75).[2]

     IT IS SO ORDERED.

Dated:  6/11/07

_____
CLAUDIA WILKEN
United States District Judge

---

    [2]Both parties seek to recover their costs in litigating this
motion.  The Court finds no grounds for such sanctions and denies
both requests.

8