Edward G. Poplawski (SBN 113590)
*epoplawski@sidley.com*
Denise L. McKenzie (SBN 193313)
*dmckenzie@sidley.com*
Franklin D. Kang (SBN 192314)
*fkang@sidley.com*
Olivia M. Kim (SBN 228382)
*okim@sidley.com*
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013-1010
Telephone:         (213) 896-6000
Facsimile:           (213) 896-6600

**Attorneys For Plaintiffs**
Atmel Corporation;
Atmel Switzerland;
Atmel France; and
Atmel SARL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ATMEL CORPORATION, a Delaware corporation; ATMEL SWITZERLAND, a corporation; ATMEL FRANCE, a corporation; and ATMEL SARL, a corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AUTHENTEC, INC., a Delaware corporation,<br><br>Defendant | Case No.  C 06-02138 CW (EDL)<br>Case No. C 07-03331 CW<br><br>**ATMEL'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE THE DECLARATION OF DR. ROGER D. MCWILLIAMS**<br><br><u>Hearing</u><br>Date:         Thursday, May 1, 2008<br>Time:        2:00 PM<br>Location:   Courtroom 2, 4th Floor<br>Judge:       Hon. Claudia Wilken |

LA1 1170845v.1

I.      INTRODUCTION

AuthenTec's Opposition to Atmel's Motion to Strike the Declaration of Dr. Roger D. McWilliams (Dkt. No. 492) baselessly argues that Dr. McWilliams did not modify the sensors or their manner of use.  However, there is no dispute that Dr. McWilliams placed conducting shims over the drive rings, soldered wires to the drive rings, disabled the drive rings, connected wires to the internal RF transmitters, and placed dielectric layers between the finger and the sensors – all of which are not normally used in AuthenTec's sensors.  Indeed, Dr. McWilliams testified: "I modified the sensors in several ways for the tests, as indicated in these first, second and third methods," "I don't know how other people use them," and "I might be surprised to see somebody using them exactly in some of the ways I've tested."  Accordingly, Dr. McWilliams' Declaration should be excluded because it relies on comparisons of the claims of the patents-in-suit to an altered instrumentality used in highly abnormal ways and therefore is not probative of non-infringement.

Furthermore, AuthenTec is unable to meet its burden to show the reliability of Dr. McWilliams' three methods.  AuthenTec does not and cannot point to any objective evidence of the reliability of Dr. McWilliams' three methods for allegedly showing a lack of contact sensitivity.  Because AuthenTec failed to satisfy its *Daubert* burden, Dr. McWilliams' Declaration should be excluded.

II.     ARGUMENT

   A.   Dr. McWilliams' Declaration Must Conform To The Governing Substantive Standard For Proving Infringement.

Expert testimony that is not helpful to the trier of fact is inadmissible.  FED. R. EVID. 702. "In assessing whether the proffered expert testimony 'will assist the trier of fact' in resolving this issue, [the Court] must look to the governing substantive standard." *Daubert v. Merrell Dow Pharma., Inc.*, 43 F.3d 1311, 1320 (9th Cir. 1994) (on remand) ("*Daubert II*").  AuthenTec's Opposition does not, and cannot, dispute this firm requirement.  AuthenTec offers the McWilliams Declaration to prove non-infringement. (AuthenTec's Opening *Markman* and Summary Judgment

Atmel's Reply In Support of Its
Motion to Strike the Declaration
of Dr. Roger D. McWilliams
C 06-02138 CW (EDL); C 07-03331

1

LA1 1170845v.1

Motion, Dkt. No. 430, at 16:5-6.) Thus, the Declaration must conform to the standard for proving infringement.

### B. The Standard For Proving Infringement Requires Comparing The Claims To Unmodified Instrumentalities As They Are Normally Used.

It is a basic axiom of patent law that the standard for proving infringement is a comparison of the accused instrumentality to the limitations of the claims. *Amgen Inc. v. Hoechst Marion Roussel, Inc.* 314 F.3d 1313, 1324 (Fed. Cir. 2003). Accordingly, "a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High-Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995). The corollary is equally true: **A device does not avoid infringement simply because it is possible to alter it in a way that would not satisfy the claims**. *See, e.g.*, *Hilgraeve Corp. v. McAfee Assoc., Inc.*, 224 F.3d 1349, 1354 (Fed. Cir. 2000) ("a test disabling the automatic capabilities of VirusScan is not probative of whether VirusScan may infringe in the automatic mode"); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) (four tests that used accused products in abnormal ways do not prove non-infringement of the products under normal operating conditions); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006) ("it matters not that the assembled device can be manipulated into a non-infringing configuration, because the instructions packages with each device teach the infringing configuration…"); *DoorKing, Inc. v. Sentex Sys., Inc.*, 19 Fed. Appx. 872, 878 (Fed. Cir. 2001) ("Because Sentex has made no showing that its devices do not infringe … in normal operation, much less an undisputed showing, we must reserve the grant of summary judgment of non-infringement.").

The Federal Circuit's case law is unequivocal: Comparing the claims to modified instrumentalities used in abnormal ways is not probative of non-infringement.[1]

---

[1] AuthenTec's citation (at p. 7 of its Opposition) to a district court case, *Linear Technology Corp. v. Micrel Inc.*, No. C-94-1633, 2006 U.S. Dist. LEXIS 96860, at *67-68 (N.D. Cal. June 9, 2007) is distinguishable because the district court also cited evidence of normal use as proving infringement. *Id.* ("Blauschild first tested the MIC2172 using the Typical Application shown in Fig. 1 of the Micrel 2172 datasheet. Blauschild measured two MIC2172 parts. The MIC2172 switch transistor operated in saturation."). Furthermore, the court's opinion does not state if Micrel intended the so-
*(Footnote continued)*

**Atmel's Reply In Support of Its Motion to Strike the Declaration of Dr. Roger D. McWilliams
C 06-02138 CW (EDL); C 07-03331**

2

LA1 1170845v.1

AuthenTec's arguments to the contrary are erroneous. (*See* AuthenTec's Opposition, Dkt. No. 492, at pp. 2-3.) The Federal Circuit was procedurally unable to exclude the non-probative evidence in the *Hilgraeve*, *Golden Blount*, and *DoorKing* cases merely because its admissibility was not appealed to the Federal Circuit (unlike in *Daubert II*). AuthenTec even admits that "[t]he issue in each of the two *Hilgraeve* cases … was solely whether or not summary judgment of noninfringement was properly granted in view of competing expert testimony." (*Id.* at p. 2 (emphasis added)). And, the fact that admissibility was not squarely before the Federal Circuit in these cases does not detract from the authority of the governing substantive standard it relied on to assess the evidence's probative value.

### C. Dr. McWilliams' Declaration Relies On Modified AuthenTec Sensors Used In Abnormal Ways.

In each of his three methods, Dr. McWilliams modified the sensors and their manner of use by the introduction of shims, dielectric materials, soldering wires to the drive ring, and/or disabling the drive ring. Indeed, Dr. McWilliams acknowledged that (1) he "**modified the sensors in several ways for the tests, as indicated in these first, second and third methods**"; (2) he does not even know what constitutes normal use of AuthenTec's sensors; and (3) he "might be surprised to see somebody using them exactly in some of the ways [he has] tested." (Ex. NN,[2] 03/13/08 McWilliams Dep. Tr. at 105:7-15; 98:16-99:12.)

Accordingly, like the *Hilgraeve*, *Golden Blount*, and *DoorKing* cases, Dr. McWilliams' experiments are not probative because they utilize modified AuthenTec sensors under abnormal use. AuthenTec does not make sensors with conducting shims, wires soldered to the drive ring, and disabled drive rings, and does not direct users to place dielectric materials over their fingers, tape wires to their body, or use their sensors in way other than directly contacting the user's fingers with

---

called "Typical Application" to be the sole normal use of its product, or if Micrel intended other uses also. Here, in contrast, AuthenTec has not intended that any commercial users modify and use its sensors in the same way that Dr. McWilliams did in his experiments.

[2] All exhibits are attached to the Declarations of Denise L. McKenzie, Dkt. Nos. 399 and 460, in support of Atmel's Opening and Responsive *Markman* and summary judgment briefs.

**Atmel's Reply In Support of Its Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

3

the sensor matrix and the drive ring. Dr. McWilliams' Declaration therefore is irrelevant to the question of infringement by AuthenTec's actual sensors in normal use.

### 1. The Introduction Of The Conductive Shims In The First Method Modified The Sensor Surface And Is Not A Normal Way Of Using AuthenTec's Sensors.

The drive ring is an integral part of AuthenTec's sensors. Peter Sherlock, AuthenTec's Vice President of Product Development, admitted that the drive ring is necessary to the operation of its sensors. (Ex. K, 11/08/07 Sherlock Dep. Tr. at 230:17-24.)[3] An exemplary AuthenTec Product Specification Sheet specifically instructs that the user's finger must make contact with the drive ring during use. (Ex. W at AUTH-A 021631.)[4] The normal method of using AuthenTec's sensors, and the only use taught by AuthenTec, is by placing the finger on the sensor surface and sliding or swiping the finger across the surface. (*See, e.g.*, Ex. Y, 11/28/07 Stewart Dep. Tr. at 33:22-36:7; Ex. V, 11/08/07 Sherlock Dep. Tr. at 215:7-11.)

Nevertheless, in his first method, Dr. McWilliams placed "conducting shims" over the drive ring on opposite sides of the sensor. (McWilliams Decl., Dkt. No. 434, at ¶ 7.) Dr. McWilliams selected shims that are electrically conductive because "**you need electrical contact with that drive ring, the external drive element, in some way**." (Ex. NN, 3/13/08 McWilliams Dep. Tr. at 120:20-122:1.) AuthenTec's allegation that "the addition of shims … in no way modified any properties of the accused devices" therefore is baseless; rather than "merely serv[ing] as a measuring stick to quantify the size of the air gaps," as AuthenTec alleges, the shims modified the sensor because they conducted the RF signal from the drive ring to the finger. (*Id.*; AuthenTec's Opposition, Dkt. No. 492, at 5:6-13.)

---

[3] *See also* Ex. W at AUTH-A 005737 (the drive ring is part of the sensor); Ex. Z at AUTH-A 018407 (the drive ring conducts the RF signal to the user's finger); Sherlock Decl., Dkt. No. 431, at ¶ 7.

[4] *See also* Ex. X at p. 8. Although these documents are for area sensors, Mr. Setlak acknowledges that AuthenTec's area sensors use the same RF technology, drive ring and sensor matrix (a/k/a detection matrix). *See* Setlak Decl., Dkt. No. 432, at ¶ 2.

**Atmel's Reply In Support of Its Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

4

AuthenTec's allegation that Dr. McWilliams testified "I have not modified the sensor surfaces at all by the introduction of shims or additional dielectrics" is misleading. (AuthenTec's Opposition, Dkt. No. 492, at 5:6-13.) Here, Dr. McWilliams was referring to the *control* experiment described in ¶ 6 of his Declaration, not the three methods described in ¶¶ 7-14 wherein he opined on "contact sensitivity." Dr. McWilliams was describing that the control experiment in ¶ 6 did not modify the sensors because it did not involve the introduction of shims or dielectric materials, unlike the three methods in ¶¶ 7-14. (Ex. NN, 3/13/08 McWilliams Dep. Tr. at 99:14-24.) Dr. McWilliams himself admitted that "the introduction of shims" constitutes a "modifi[cation] [of] the sensor surface." (*Id.*) Indeed, Dr. McWilliams' Declaration describes only the control experiment in ¶ 6 as using "normal conditions," and he testified that "normal" means "an unmodified sensor." (*Id.* at 108:16-22.) This control experiment, however, was not used or relied on to provide any opinions about "contact sensitivity."

### 2. The Introduction Of Additional Dielectrics In The Second Method Modified The Sensor Surface And Is Not A Normal Way Of Using AuthenTec's Sensors.

Similar to the first method, Dr. McWilliams highly modified the sensor in the second method. First, Dr. McWilliams covered the entire finger with a non-conductive dielectric layer so that the dielectric was between the finger and the sensor. (*Id.* at 128:9-23; 129:7-130:3.) As Dr. McWilliams admitted, such "introduction of [] additional dielectrics" constitutes a "modifi[cation] [of] the sensor surface." (*Id.* at 99:14-24; *see also id.* at 122:21-123:9 ("So the modification to the sensor … is changing the distance that the finger is above the protective layer above the sensors by different thicknesses of plastic [(*i.e.*, dielectric)] layers.")). Second, Dr. McWilliams soldered a wire to the drive ring to "reroute[] the RF signal to a part of the finger that did not contact the accused device." (AuthenTec's Opposition, Dkt. No. 492, at 5:19-21; *see also* Ex. NN, 3/13/08 McWilliams Dep. Tr. at 133:2-6.) Like the conductive shims in method 1, the wire modified and became a necessary part of the AuthenTec sensor; "when the finger was unwired … no print image was taken during the swipe." (Ex. NN, 3/13/08 McWilliams Dep. Tr. at 128:9-23; *see also id.* at 138:12-20.) AuthenTec's allegation that the detection matrix was not modified is irrelevant because the drive

**Atmel's Reply In Support of Its
Motion to Strike the Declaration
of Dr. Roger D. McWilliams
C 06-02138 CW (EDL); C 07-03331**

ring, also a part of the sensor, clearly was modified. Also, AuthenTec's allegation is erroneous because the introduction of the dielectric layer modified the detection matrix by changing the distance of the finger above it. (*Id.* at 122:21-123:9.) Moreover, AuthenTec provides no support for its assertion that the second method did not modify the RF signal that is normally applied to the finger. (AuthenTec's Opposition, Dkt. No. 492, at 5:19-20; *see also id.* at 8:1-7.) AuthenTec's unsupported assertion is belied by the McWilliams' Declaration, which does not opine on whether he used the same RF signal present on the drive ring under normal operation, and his deposition testimony, where he could not confirm whether his three test methods used unmodified RF signals. (Ex. NN, 3/13/08 McWilliams Dep. Tr. at 143:24-145:4.)

### 3. The Third Method Of Disabling The Drive Ring Modified The Sensor Surface And Is Not A Normal Method Of Using AuthenTec's Sensors.

In his third method, Dr. McWilliams was provided a sensor with the drive ring entirely disabled, a wire soldered to the excitation source (*i.e.*, the part of the sensor that produces the RF signal which, in un-modified sensors, is subsequently delivered to the finger by the drive ring), and a copper plate at the end of the wire. (*Id.* at 113:25-114:5.) Rather than contacting the finger to be scanned with the drive ring as in normal use, Dr. McWilliams placed the copper plate on an area of the body remote from the finger. (McWilliams Decl., Dkt. No. 434, at ¶ 13.) Additionally, like the second method, Dr. McWilliams used dielectric materials on the finger, which "**modified the sensor**." (*Id.* at ¶ 14; Ex. NN, 3/13/08 McWilliams Dep. Tr. at 99:14-24; 122:21-123:9.) Again, AuthenTec's allegation that the operation of the devices was not modified is clearly erroneous given that AuthenTec previously admitted that the third method "is obviously not the normal method of using the AuthenTec sensors." (AuthenTec's Opening *Markman* and Summary Judgment Motion, Dkt. No. 430, at 17, n.20; AuthenTec's Opposition, Dkt. No. 492, at 6:6-13.)

### D. AuthenTec Has Not Satisfied Its Burden of Pointing To Objective Evidence Of The Reliability Of Dr. McWilliams' Experiments.

It is AuthenTec's burden to point to an appropriate objective source to demonstrate the alleged reliability of the McWilliams Declaration. *Daubert II*, 43 F.3d at 1319. However, AuthenTec has failed to do so.

Atmel's Reply In Support of Its
Motion to Strike the Declaration
of Dr. Roger D. McWilliams
C 06-02138 CW (EDL); C 07-03331

6

1    *Daubert II* requires, in order to establish reliability, that an expert "point to some objective
2    source – a learned treatise, the policy statement of a professional association, a published article in a
3    reputable scientific journal or the like – to show that they have followed the scientific method, as it
4    is practiced by (at least) a recognized minority of scientists in their field" if the expert's testimony
5    does not grow out of pre-litigation research and has not been subjected to peer review. *Id.* at 1319.
6    Here, Dr. McWilliams' Declaration relies on post-litigation research and has not been subjected to
7    peer review, and AuthenTec does not contend otherwise. (Ex. NN, 03/13/08 McWilliams Dep. Tr.
8    at 9:6-14.)

9    But rather than presenting objective evidence of reliability, AuthenTec instead attempts to
10   shift its burden by arguing that Atmel did not question Dr. McWilliams regarding the reliability of
11   his methods. (AuthenTec's Opposition, Dkt. No. 492, at 6:22-7:2.) To the contrary, Atmel
12   questioned Dr. McWilliams regarding whether he had ever previously seen experiments such as his
13   three methods performed in order to test for contact sensitivity and whether there was an engineering
14   standard for such a determination. (Ex. NN, 3/13/08 McWilliams Dep. Tr. at 151:24-152:13.) In
15   both instances, he answered in the negative. (*Id.*) Regardless, it is AuthenTec's burden to show
16   reliability. *Daubert II*, 43 F.3d at 1319.

17   AuthenTec further argues that the lack of objective evidence is cured by the fact "that there is
18   no accepted standard for determining contact sensitivity." (AuthenTec's Opposition, Dkt. No. 492,
19   at 6:16-18.) That is exactly the point: AuthenTec would have the Court accept as reliable the
20   McWilliams Declaration on his and its *ipse dixit*. "Under *Daubert*, that's not enough." *Daubert II*,
21   43 F.3d at 1319. What is required is objective evidence of reliability – exactly what AuthenTec
22   lacks.

23   AuthenTec asserts, without citation, that the reliability of the McWilliams Declaration is
24   "corroborat[ed] [by] the documentation and technical employee testimony provided by AuthenTec."
25   (AuthenTec's Opposition, Dkt. No. 492, at 7:14-16.) Not only is this assertion unsupported, it also
26   is unavailing because: (1) AuthenTec's own testimony and documents are not the objective indicia
27   of reliability required by *Daubert II* (*i.e.*, "a learned treatise, the policy statement of a professional

28   **Atmel's Reply In Support of Its**
     **Motion to Strike the Declaration**    7
     **of Dr. Roger D. McWilliams**
     **C 06-02138 CW (EDL); C 07-03331**

LA1 1170845v.1

association, a published article in a reputable scientific journal"); and (2) in no way do AuthenTec's documents and employee testimony suggest that Dr. McWilliams' tests are a reliable way to determine contact sensitivity of fingerprint sensors. And AuthenTec's arguments that Dr. McWilliams' measurements are reliable is a red-herring. The issue is whether modifying the sensors and their manner of use and excluding the drive ring from his definition of "sensor" is a reliable way to determine contact sensitivity, not merely whether Dr. McWilliams' physical measurements of air gaps are reliable. (*Id.* at 6:19-7:7.)

AuthenTec further argues, again without citation, that reliability is proven by Dr. McWilliams' allege use of "the same RF signal present on the drive ring under normal operation." (AuthenTec's Opposition, Dkt. No. 492, at 8:1-2.) However, AuthenTec's unsupported assertion that Dr. McWilliams used the normal RF signal is belied by the McWilliams' Declaration, which does not opine on whether he used the same RF signal present on the drive ring under normal operation, and his deposition testimony, where he could not confirm whether his three test methods used unmodified RF signals. (Ex. NN, 3/13/08 McWilliams Dep. Tr. at 143:24-145:4.) And AuthenTec's unsupported assertion that Dr. McWilliams used a drive ring under normal operation is belied, as explained above, by the insertion of conductive shims, soldering of wires, disabling of the drive ring, and use of dielectric layers in Dr. McWilliams' three methods. (*See* McWilliams Decl., Dkt. No. 434, at ¶¶ 7-14.)

Accordingly, Dr. McWilliams Declaration should be excluded because there is no objective evidence of the reliability of his methods for testing for contact sensitivity.

### E. Dr. McWilliams' Declaration Is Not Useful To Court.

Dr. McWilliams' experiments, at best, suggest that AuthenTec's sensors can be modified and used in abnormal ways in order to avoid infringing Atmel's patents-in-suit so long as the drive ring is not considered part of the "sensing surface" and the "sensor." This testimony is useless to the Court because it does not comply with the Federal Circuit's standard for proving infringement. Accordingly, Dr. McWilliams' Declaration should be excluded.

**Atmel's Reply In Support of Its Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

8

LA1 1170845v.1

### III. CONCLUSION

For the foregoing reasons, Atmel respectfully submit that Dr. McWilliams Declaration be excluded.

Respectfully Submitted,

DATED: April 17, 2008   By: *s/ Olivia M. Kim*
Edward G. Poplawski
Denise L. McKenzie
Olivia M. Kim
SIDLEY AUSTIN LLP

555 West Fifth Street, Suite 4000
Los Angeles, California 90013-1010
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Plaintiffs, Atmel Corporation;
Atmel Switzerland; Atmel France; and Atmel SARL

**Atmel's Reply In Support of Its Motion to Strike the Declaration of Dr. Roger D. McWilliams**
**C 06-02138 CW (EDL); C 07-03331**

9

LA1 1170845v.1