IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATMEL CORPORATION, a Delaware corporation; ATMEL SWITZERLAND, a corporation; ATMEL FRANCE, a corporation; ATMEL SARL, a corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>AUTHENTEC, INC., a Delaware corporation,<br><br>    Defendant.<br>_____/ | No. C 06-2138 CW<br>    C 07-3331 CW<br><br>ORDER ON CLAIM CONSTRUCTION AND CROSS-MOTIONS FOR SUMMARY JUDGMENT |

    Plaintiffs Atmel Corporation, Atmel Switzerland, Atmel France and Atmel SARL and Defendant Authentec, Inc. dispute the meaning of several terms and phrases used in U.S. Patent No. 6,289,114 (the '114 patent) and U.S. Patent No. 6,459,804 (the '804 patent). Plaintiffs and Defendant each ask the Court to adopt their proposed construction of the disputed terms and phrases. In addition, Plaintiffs move for partial summary judgment. Defendant opposes the motion, cross-moves for summary judgment and moves for an exceptional case finding. Plaintiffs oppose those motions. The

motions were heard on May 1, 2008.  The Court has considered the parties' papers and oral argument.  The Court finds it unnecessary to construe the disputed claim terms.  Construing the claims as Plaintiffs propose for the purpose of the motions, the Court denies Plaintiffs' motion for partial summary judgment, grants Defendant's motion for summary judgment and denies Defendant's motion for an exceptional case finding.

## BACKGROUND

Plaintiffs and Defendant are competitors that produce biometric fingerprint sensors used to secure small electronic devices.  Plaintiffs argue that they invented semiconductor slide sensors, which greatly reduce the size of the sensor surface because such slide sensors can recreate the image of a fingerprint by reassembling several smaller images or "slices" captured as the finger slides over the sensor or the sensor slides over the finger. Plaintiffs contend that, prior to their invention, fingerprint sensors, including Defendant's, read an entire fingerprint that was placed directly on the sensor surface (area sensors).  Because the sensor surface on an area sensor needs to be large enough to accommodate an entire fingertip at once, such sensors are less practical than slide sensors for small electronic devices such as cell phones and PDAs.  Plaintiffs allege that these inventions are protected by the '114 and '804 patents, which claim a fingerprint-reading system that

> includes a fingerprint sensor having an active surface sensitive to the pressure and temperature of a finger. The surface area of this sensor is far smaller than the surface area of the fingerprint to be read.  The reading is done when the sensor and the finger are in

2

>     contact and in a relative motion of sliding of the
>     sensor and the finger with respect to each other.  The
>     system reconstitutes a complete image of the
>     fingerprint from the partial images given by the
>     sensor during this motion.

'114 and '804 patents Abstract.[1]  The patents-in-suit propose a sensor that "delivers only partial images of the complete fingerprint" and provides that the "reconstruction of the complete image of the fingerprints is obtained by the superimposition of successive images given by the sensor during its relative shift with respect to the finger."  '114 patent, col. 3, ln. 31-35.  The patents disclose improvements over the prior art using optical devices which were faulty because they could be tricked with a photograph or model of a finger and because of their size and high production costs.  Id. at col. 1, ln. 27-42.

The patents also disclose improvements over prior art using capacitive, piezoelectric and pyroelectric sensors.[2]  These sensors only work with a live finger but also have a variety of drawbacks.  For example, the surface area of the sensor still has to be the size of the fingerprint to be read.  Because these have to be so large and are integrated directly into the very costly semiconductor substrate, the cost of production is high.  Id. at col. 2, ln. 20-22.  Moreover, the signal created by these sensors

---

[1] Because the '804 patent is a continuation claiming a method of using the apparatus claimed in the '114 patent, the text of the two is identical except for the claims.  However, the pagination and line numbers vary minimally.  All citations to text in the patents, except for the claims, will be to the '114 patent.

[2] Capacitive sensors measure electrical charge; piezoelectric sensors measure pressure; and pyroelectric sensors measure temperature.

3

only exists for as long as the finger is in contact with the surface. Because there are variations of physical effects such as the pressure being applied on the sensor, the sensor is constantly producing images and requires the recognition system "to analyze all the images . . . in order to find the one most appropriate for authentication." Id. at col. 2, ln. 37-40. Other systems using "excitation external to the sensor" such as "the sending of an energy beam in the form of microwaves" had been found to "complicate the system and increase its volume and cost." Id. at col. 2, ln. 42-44.

The invention disclosed in the patents-in-suit seeks to overcome these drawbacks. First, because the sensor and the finger slide relative to one another, the sensor need not be as large as the fingerprint to be read. Second, because the finger moves across the sensor "successively with a speed that is in the same ranges as or faster than the time constant characteristic of the sensitive layer of the sensor," the sensor "provides a sequence of images with a constant quality of contrast." Id. at col. 3, ln. 3-7. Further, "inasmuch as the relative speed of shift of the finger with respect to the sensor does not exceed a certain maximum value, an image given by the sensor at a given instant will at least partially overlap the following one." Id. at col. 3, ln. 18-21. Therefore, the "complete image of the fingerprint could be reconstituted by a specific processing system." Id. at col. 3, ln. 21-23. The '114 patent contains apparatus claims and the '804 patent claims a method of using the apparatus claimed in the '114 patent.

4

Plaintiffs argue that several of Defendant's EntrePad sensors (AES products) infringe claims 1, 2, 4, 7-10, 12, 14 and 17-19 of the '114 patent and claims 1, 5, 6, 10, 11, 15 and 16 of the '804 patent.  Defendant's AES products utilize radio-frequency sensing technology to "read" the fingerprint patterns on the live layer of skin beneath the finger's dry outer surface layer.  The AES product works when a person presses her finger against the drive ring, which injects a small radio-frequency signal into the finger.  The radio frequency is then read by the detection matrix, which "sense[s] the strength of the electric field which is established by the boundary condition of the ridge valley pattern inside itself and the actual metal layers inside the . . . over-all package." McKenzie Decl., Ex. K at 230.

                              DISCUSSION

I.  Claim Construction

In their joint claim construction statement, the parties identified thirty-one terms for construction.  They agree on the construction for three of those terms and submit the remainder to the Court.  Ordinarily, the Court must first construe the claims of the patent before considering questions of infringement.  See SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1339-40 (Fed. Cir. 2005).  However, as Defendant argues, even if the Court adopts Plaintiffs' proposed constructions in full, Defendant's products do not infringe the patents-in-suit.  Therefore, for purposes of deciding Defendant's motion for summary judgment, the Court adopts Plaintiffs' proposed claim construction.  Further, for purposes of deciding Defendant's motion, the Court need rely on

5

only four terms, the same four that Plaintiffs identify as the "most important": "sensor," "sensing surface," "sensing elements" and "contact sensitive elements." These terms all appear in Claim 1 of the '114 patent.

Claim 1 of the '114 patent provides, "A fingerprint reading system comprising: means for reading a fingerprint including a sensor having a sensing surface coupled to a matrix of contact sensitive elements for generating a series of partial images of a finger, placed in direct contact with said sensing surface, from relative sliding contact between said sensing surface and said finger, said sensing surface having a surface area smaller than a surface area of said fingerprint to be read; and means for reconstituting a total image of the fingerprint from said partial images."

According to Plaintiffs, a "sensor" is "Any device that can detect or measure something," and a "sensing surface" is "A surface of the sensor that detects finger contact wherein the sensor is integrated onto a semiconductor substrate and is not an optical sensor." The "sensing elements" are "Two or more component parts that are responsive to contact between a finger and the sensing surface of the sensor wherein the sensor is integrated onto a semiconductor substrate and is not an optical sensor." Finally, "contact sensitive elements" are "Two or more component parts that are responsive to contact between a finger and the sensing surface of the sensor wherein the sensor is integrated onto a semiconductor substrate and is not an optical sensor."

6

II. Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

7

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate

8

burden of persuasion at trial.  Id. at 1107.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue.  UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue.  Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991).  Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case.  UA Local 343, 48 F.3d at 1471.  The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible."  Id.  This standard does not change merely because resolution of the relevant issue is "highly fact specific."  Id.

A.  Defendant's Motion for Summary Judgment

Defendant argues that, even using Plaintiffs' construction of the relevant terms, the accused products do not infringe the patents-in-suit because the products do not require "direct contact" between the user's finger and the "sensing surface" as provided for in claims 1 and 17 of the '414 patent.  Rather, Defendant argues, its products require the user to contact the drive ring, which injects a radio-frequency signal into the finger, thereby creating an electric field captured by the detection matrix and used to image the fingerprint.

Plaintiffs do not dispute this description of Defendant's products.  See Plaintiffs' Responsive Brief at 10.  Instead,

9

1  Plaintiffs contend that the "sensing surface" includes both the
2  detection matrix and the drive ring.  Plaintiffs argue that,
3  because an individual must make contact with the drive ring to use
4  the sensor, Defendant's products require "direct contact" between
5  the user's finger and the "sensing surface."  However, as described
6  above, Plaintiffs' own construction of "sensing surface" is "A
7  surface of the sensor that detects finger contact wherein the
8  sensor is integrated onto a semiconductor substrate and is not an
9  optical sensor."

10 Plaintiffs contend that the drive ring "detects finger
11 contact" and is therefore part of the sensing surface.  However,
12 this argument is based on Plaintiffs' assertion that Defendant's
13 "sensor specifications indicate that the sensor captures images
14 once a 'finger has been detected on the sensor.'"  Plaintiffs'
15 Responsive Brief at 10 (quoting Product Specification for the
16 AES4000 Fingerprint Sensor).  As Defendant points out, the quoted
17 specification is for a product that is not accused of infringing,
18 a product in which the drive ring is used as a power-up mechanism.
19 This power-up feature is not included in the accused products.
20 Moreover, as Defendant points out, Plaintiffs' infringement
21 contentions include only the detection matrix as the part of the
22 accused products that comprises the "sensing surface coupled to a
23 matrix of several lines of sensing elements" identified in claim 17
24 of the '114 patent.  See DeMory Reply Decl., Ex. 39.  Plaintiffs'
25 infringement contentions do not mention the drive ring.  See id.
26 Further, the "undisputed material facts" (UMFs) Plaintiffs
27 include in their opening brief make clear that the drive ring is

10

not part of their own construction of "sensing surface."  UMF I states, "The sensor device in the AES products includes both the detection matrix and the drive ring."  Plaintiffs' opening brief at 23.  However, UMF E states, "The AES products have a sensor that detects" and goes on to cite the specifications for the AES products' detection matrices.  <u>Id.</u> at 22.  The fact that a "sensor device" includes the drive ring does not necessarily mean that the "sensing surface" includes the drive ring.  Moreover, as Defendant points out, the drive ring transmits a signal into the finger; it does not detect any part of, or signal from, the finger.

The Court finds that the drive ring is not part of the "sensing surface."  Therefore Defendant's accused products do not infringe independent claim 1 of the '114 patent, which requires that the user's finger be "placed in direct contact with [the] sensing surface."  Because Defendant's products do not infringe independent claim 1, they also do not infringe claims 2, 4, 7, 8, 9, 10, 12, or 14, which depend on claim 1.  Independent claim 17 of the '114 patent also requires "a finger placed in contact with [the] sensing surface."  Therefore, the accused products do not infringe independent claim 17 or dependent claims 18 and 19 of the '114 patent.

Moreover, Defendant asserts and Plaintiffs do not dispute that the "'804 patent claims only a method of using an apparatus claimed in the '114 patent."  Defendant's opening brief at 4.  Because Defendant's products do not infringe the apparatus claimed in the '114 patent, they cannot infringe the method of using that apparatus claimed in the '804 patent.

11

III. Exceptional Case Finding

Defendant argues that it should be awarded reasonable attorneys' fees under 35 U.S.C. § 285, which provides that in exceptional patent cases courts "may award reasonable attorney fees to the prevailing party." In <u>Cambridge Products, Ltd. v. Penn Nutrients, Inc.</u>, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992), the court found that the exceptional nature of the case must be established by clear and convincing evidence, explaining that "exceptional cases" are normally those involving bad faith litigation or fraud or inequitable conduct by the patentee in procuring the patent.

Defendant contends that Plaintiffs engaged in misconduct during litigation. In particular, Defendant contends that Plaintiffs purposefully misrepresented the licensing history of the patents-in-suit in their papers filed in opposition to Defendant's motion to dismiss. Further, Defendant argues that, despite two court orders to do so, Plaintiffs have wrongfully refused to respond to written discovery and deposition questions regarding the licenses. Because Magistrate Judge Laporte is more familiar with the parties' conduct during discovery, the Court finds that she is better equipped to evaluate Defendant's allegations of misconduct. These allegations are the subject of Defendant's motion for sanctions currently under submission before Magistrate Judge Laporte.

Defendant also argues that the merits of the case warrant an exceptional case finding. Even absent a finding of misconduct, a prevailing party may be granted attorneys' fees if "(1) the litigation is brought in subjective bad faith, and (2) the

12

litigation is objectively baseless." <u>Brooks Furniture Mfg. v. Dutailier Int'l, Inc.</u>, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Defendant argues that it is entitled to attorneys' fees because, even accepting Plaintiffs' proposed claim construction, the accused products do not infringe the patents-in-suit. Therefore, Defendant contends that the litigation is objectively baseless. Plaintiffs counter that they hired outside counsel to conduct an investigation prior to filing this lawsuit. Although the deposition testimony Plaintiffs file in support of their argument that they conducted a reasonable investigation is notably vague, Defendant bears the burden of establishing that Plaintiffs acted in subjective bad faith. The only evidence Defendant cites in support of this finding is an email by the inventor discussing the likelihood of proving that other products not at issue in this case infringe the patents-in-suit. This is not clear and convincing evidence that Plaintiffs brought this suit in bad faith.

## CONCLUSION

For the foregoing reasons, the Court accepts Plaintiffs' construction of the relevant terms for purposes of deciding Defendant's motion for summary judgment. The Court DENIES Plaintiffs' motion for partial summary judgment (Docket No. 398), GRANTS Defendant's motion for summary judgment and DENIES its motion for an exceptional case finding (Docket No. 430).[3] Once the motions pending before the Magistrate Judge have been resolved, the

---

[3] Plaintiffs' motion to strike the McWilliams declaration (Docket No. 462) is DENIED as moot. The Court did not consider the declaration in deciding these motions.

Clerk shall enter judgment for Defendant and close the file. Defendant shall recover its costs from Plaintiffs jointly and severally.

IT IS SO ORDERED.

Dated: 5/5/08

CLAUDIA WILKEN
United States District Judge